(46 South. 103.)

No. 16,826.

### HIRSH v. VALLOFT et al.

(Nov. 18, 1907. On the Merits, March 16, 1908. Rehearing Denied April 13, 1908.)

1. APPEAL—JURISDICTION — AMOUNT IN CONTROVERSY.

Where a sublessee sued out an injunction to protect him in the peaceable enjoyment of the leased premises, and also for $2,000 damages for trespass already committed, the value of the sublease forms a part of the "matter in dispute," and must be considered in determining the jurisdiction of the Supreme Court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 2, Appeal and Error, §§ 233–260.]

2. LANDLORD AND TENANT — LEASE — CONSTRUCTION — "THE PREMISES WHICH HE HOLDS UNDER LEASE."

It appearing that the parties to the contract of lease interpreted it to mean that the lessee was entitled to hold thereunder only the store proper, or ground floor of a building, and that he in fact held only that part of the building, and it also appearing that a sublessee, before making his contract, was apprised of such interpretation and of the fact stated, the language, "the premises which he holds under lease," used to describe the property subleased, is construed to mean the property actually held by the sublessee, rather than that which he might have held, had the lease to him been otherwise interpreted.

3. SAME—RIGHTS OF LESSOR—IMPROVEMENTS.

A lessor has no right, without the consent of the lessee, to impose additional burdens on leased premises, or to enter thereon for the purposes of putting in improvements to enhance the rental value of other property, or for the convenience of other tenants, and the lessee may enjoin him from so doing.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 32, Landlord and Tenant, §§ 460, 608–610.]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Thomas C. W. Ellis, Judge.

Action by Abraham I. Hirsh against Louis E. Valloft and others. Judgment for plain-

tiff, and defendants appeal. Modified and affirmed.

Barnard Bee Howard and George Montgomery, for appellants. Foster, Milling & Godchaux and Alexis Brian, for appellee.

LAND, J. The ground of the motion to dismiss is that this court is without jurisdiction ratione materiæ, because the amount in dispute does not exceed $2,000. It appears from the allegations of the petition that this suit has two objects, to wit: (1) To maintain plaintiff in peaceable possession as sublessee of certain premises by writ of injunction; and (2) to recover $2,000 damages already accrued for the unlawful disturbance of his possession. It appears from the answer that the plaintiff's rights as sublessee are admitted as to the ground floor of the building, but are denied as to the second and third floors.

The judgment rejected plaintiff's claim for damages, but recognized his rights of possession as to the entire premises by perpetuating the injunction as prayed for. It is patent that there are two demands—one for damages, and the other to be maintained in peaceable possession of the premises until the expiration of the lease, a right which certainly is worth enough to make the amounts in dispute exceed the sum of $2,000, the lower limit of our jurisdiction.

The motion to dismiss is therefore overruled.

### Statement of the Case.

MONROE, J. Defendant Valloft, being the lessee of a building fronting on Canal street and extending from Decatur to Dorsiere street, in New Orleans, sublet a portion of it to J. G. Libadiotte, who in turn sublet to plaintiff, and this litigation has arisen from a difference of opinion as to the extent of the premises included in, and plaintiff's rights under, his sublease. The building in question measures 70 feet on Canal street by 49 feet in depth on Decatur and Dorsiere streets, and is three stories high. Prior to the lease by the owner to Valloft, it had been leased to Abes & Davis, who occupied the whole of it as a clothing store. When Valloft took possession, he divided the lower floor into four stores, fronting on Canal street; and, retaining the store on the corner of Decatur street for his own use, or for the use of Charles T. Bess and himself, sublet the store on the corner of Dorsiere street, measuring 15 feet front on Canal street, to Libadiotte, and the other stores to other tenants. The upper stories of the building consisted, respectively, of single apartments, and, save for a small spiral staircase and an elevator in the store taken by Libadiotte, were accessible only by means of a stairway running up from Decatur street, in the rear of the corner store. As it seems to have been perfectly understood, however, as between Valloft and his sublessees (including Libadiotte), that the latter were leasing only the stores proper on the lower floor, Libadiotte removed the spiral staircase from his store, and Bess, acting for Valloft, caused the elevator to be hoisted to the top of the building, after which the openings were covered and there was no further communication with the upper floors, save by means of the stairway on Decatur street. That being the situation, plaintiff entered into negotiations with Libadiotte for a sublease from him, and as there was some question as to the kinds of businesses for which the stores, or either of them, could be subleased, they called to see Valloft about it; and Valloft testifies that, in the conversation on that occasion, plaintiff was given distinctly to understand that Libadiotte occupied, and could sublease, only the store proper, or lower floor. There being no objection to plaintiff's business, however, the negotiations between him and Libadiotte proceeded, and eventually resulted in plaintiff's paying Libadiotte a bonus

and assuming the obligations of his sublease from Valloft. Plaintiff did not at that time look at the upper floors of the building, and, though the key of the store proper alone was delivered to him, and there was no other means of access to the upper floor save by the Decatur street entrance, he made no demand for a key to that entrance, nor did he attempt to make any use of the upper floors, except that, when he was fitting up his store, he caused some of the material which was removed from the front to be sent up there, to which Bess, acting for Valloft, made no objection (though he was not consulted), as the space was not occupied. Upon the other hand, conceiving that the manner in which the openings in the ceiling of his store (left by the removal of the spiral staircase and the elevator) had been covered was unsatisfactory, plaintiff caused them to be covered more securely, and, having otherwise arranged matters to suit himself, proceeded to carry on his business in the store proper, apparently without thinking, and still less without assuming or asserting, that he was entitled to the use of any other part of the building. In fact, Valloft and Bess testify that, in a conversation which took place with them shortly after plaintiff had moved in, it was suggested that he might rent the upper floors over his store, and that he replied, in effect, that he did not then need them, and that it would be better for him to expand cautiously. Some three or four months later, however, Valloft employed a contractor, by whom a lot of mechanics were set to work to divide the second floor of the building into compartments and fit them to be rented as offices or otherwise, and the owner of the building, at Valloft's instance, employed a plumber, who was proceeding to construct closets and lavatories, etc., for all the offices, immediately over plaintiff's store, and connect them with a cesspool, which already existed under his store, but the use of which

had been long before (during the occupancy of Abes & Davis) discontinued, and thereupon plaintiff applied for and obtained a writ of injunction, prohibiting and restraining "Louis E. Valloft and his agents, * * * particularly said Charles T. Bess, * * * from entering or trespassing upon the real estate improvements subject to petitioner's sublease, * * * and from in any manner making or attempting to make, or causing to be made, any connection with the cesspool upon said premises, and from making, or attempting to make, any use of the cesspool, whatever," and plaintiff also alleged, and prayed judgment for, damages.

The sublease from Libadiotte to plaintiff describes the leased premises as:

"The premises, situated at the corner of Canal and Dorsiere streets, * * * which he holds under lease from Louis Valloft, * * * which said lease is hereto annexed and made part hereof."

The description in the sublease from Valloft to Libadiotte reads:

"The 15 feet, starting at Dorsiere street, of premises and appurtenances known as No. ———. corner Canal and Dorsiere streets. * * * together with all the improvements situated thereon."

There is some testimony in the record to the effect that, about the time of the signing of the sublease from Libadiotte to plaintiff (the witnesses differing as to whether it took place just before or just after the signing), something was said as to the extent of the premises, and there seems to be no doubt that Libadiotte's attorney then stated that he held under his sublease, and was subleasing to plaintiff, only the store proper. Plaintiff's counsel, on the other hand, said that his client was subleasing the property included in the sublease to Libadiotte. The main discussion at that time, however, related to other matters, and the issue in question was not threshed out.

There was judgment in the lower court maintaining the injunction as issued, and defendants have appealed.

Opinion.

It is quite true that the sublease from Valloft to Libadiotte is susceptible of another interpretation; but the parties thereto were at liberty to construe it as they pleased, and there is no manner of doubt that they construed it to mean that Libadiotte held under it only the store proper, or ground floor of the building therein described; and we think the evidence makes it equally certain that plaintiff, before subleasing from Libadiotte, was apprised of the fact that the latter considered that he had leased and was holding only the portion of the premises thus mentioned. Reading, therefore, the description contained in the sublease upon which plaintiff sues in connection with the fact that Libadiotte was holding only the store proper under his sublease from Valloft, and in connection with the further fact that plaintiff knew what he was holding, the language of that description acquires a significance to which it might not otherwise be entitled, and we take the words "the premises which he holds under lease," etc., to mean the premises which Libadiotte actually held, rather than those which he might have held, had the sublease from Valloft been otherwise interpreted. It seems evident, however, that the attempt of the lessor of the building to impose an additional burden upon the leased store, by utilizing a cesspool under the floor for the convenience of the new offices which he was constructing, was unwarranted, and to that extent the injunction was properly maintained.

It is therefore ordered, adjudged, and decreed that, in so far as the judgment appealed from maintains the injunction prohibiting and restraining defendants from using the two upper floors of the building fronting on Canal street, between Decatur and Dorsiere, the same be avoided and reversed, and the injunction in that respect dissolved.

It is further adjudged and decreed that in all other respects said judgment be affirmed, and said injunction maintained; plaintiff (appellee) to pay the costs of the appeal.